## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Ian Smythe, being duly sworn, depose and state that:

### Introduction

I, Ian Smythe, having been first duly sworn, do hereby depose and state as follows:

1.      I have been employed as a Special Agent ("SA") of the Federal Bureau of Investigation ("FBI") since June 2003, and am currently assigned to the FBI's Boston Division, Springfield Resident Agency. While employed by the FBI, I have investigated federal criminal violations related to high technology or cyber crime, child exploitation, and child pornography. I have gained experience through training with the FBI, Department of Justice, the National Center for Missing and Exploited Children, and the National Human Trafficking Center, among others, and through everyday work relating to conducting these types of investigations. I have received training in the area of child pornography and the sexual exploitation of children, and have observed and reviewed numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media. I have conducted numerous investigations involving child pornography and child sexual exploitation. Moreover, I am a federal law enforcement officer who is engaged in enforcing federal criminal law, including 18 U.S.C. §§ 2251 and 2252A, and I am authorized by the Attorney General to request a Criminal Complaint.

2.      This affidavit is submitted in support of a Criminal Complaint alleging that on or about June 23, 2015, within the District of Massachusetts and elsewhere, the defendant Edward Dupont ("Dupont") committed a violation of Title 18, United States Code, Section 2252(a)(4)(B) (Possession Of Material Involving The Sexual Exploitation Of Minors) (the "Subject Offense").

3.      The statements contained in this affidavit are based in part on: information provided by FBI Special Agents; written reports about this and other investigations that I have

1

received, directly or indirectly, from other law enforcement agents, information gathered from the service of administrative subpoenas; the results of physical and electronic surveillance conducted by law enforcement agents; independent investigation and analysis by FBI agents / analysts and computer forensic professionals; and my experience, training and background with the FBI.

4.    Because this affidavit is being submitted for the limited purpose of securing authorization for the requested Criminal Complaint, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts that I believe are necessary to establish the necessary foundation for the requested Criminal Complaint.

Relevant Statutes

5.    Title 18, United States Code, Section 2252(a)(4)(B) provides in pertinent part:

Title 18, United States Code, Section 2252(a)(4)(B), provides in pertinent part:

> Any person who . . . knowingly possesses, or knowingly accesses with intent to view, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if -
>
> (i)    the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
>
> (ii)    such visual depiction is of such conduct;
>
> shall be punished [].

18 U.S.C. § 2252(a)(4)(B).

6.    The term "computer" as used herein is defined in Title 18, United States Code, Section 1030(e)(1), as "an electronic, magnetic, optical, electrochemical, or other high speed data

processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device."   18 U.S.C. § 1030(e)(1).

7.      Title 18, United States Code, Section 2256(1) defines a "minor" as "any person under the age of eighteen years.""   18 U.S.C. § 2256(1).

8.      Title 18, United States Code, Section 2256(2)(A) defines "sexually explicit conduct" as "actual or simulated -- (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person."   18 U.S.C. § 2256(2)(A).

9.      Title 18, United States Code, Section 2256(5) provides that "'visual depiction' includes undeveloped film and videotape, data stored on computer disk or by electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format."   18 U.S.C. § 2256(5).

<u>The Search Of Dupont's Residence and The Interview Of Dupont</u>

10.     On June 18, 2015, United States Magistrate Judge Katherine A. Robertson authorized a search warrant for Dupont's residence on Kane Road in Holyoke, Massachusetts. The search warrant authorized the FBI to search for, and seize, evidence of child pornography offenses, including the Subject Offense.

11.     On June 23, 2015, I and other members of the FBI executed the search warrant.

Dupont and his wife, Mary, were home.   Dupont waived his *Miranda* rights, orally and in writing, and agreed to speak with me.

12.     During the interview, Dupont stated the following:

a.     Dupont has a sexual interest in young children.

b.     Dupont has used his computer to access child pornography sites on the Internet and to download child pornography images and videos.

c.     Dupont currently possessed CP on his home computer.

d.     Dupont estimated he accessed CP sites three times per week, and typically deleted CP that he obtained weekly, because he was ashamed of himself.

e.     Dupont had "trashed" two prior hard drives that had stopped working because of viruses and malware; both of those drives had contained CP as well.

f.     Dupont had installed and used the TOR network on his computer to access child pornography sites within the network.

g.     Dupont had done open Internet searches for child pornography in the past, but he said that "the hard stuff" was on TOR.

h.     On one particular TOR site, Dupont accessed and downloaded child pornography images and involving young children.  He also posted numerous comments to image boards hosted by the site, including one post on December 19, 2014, in which he stated:  "I agree we need more sites if only we could do something. In the U S there are to [sic] many out to destroy us."

i.     Dupont denied ever having sexual contact with children, although he admitted that:

4

      i.     He had twelve grandchildren who visited his house occasionally; and

      ii.    Neighborhood children came over to play in his backyard and in his basement.

      iii.   He had given keys to the house to the neighbors so that their children could come over any time they wanted, and he maintained a cupboard with children's games for the kids to play with when they came to the house.

13.    Pursuant to the warrant, FBI agents seized a Dell Dimension 5100 personal computer that contained a Seagate Barracuda 500GB hard drive, with S/N# Z3TR0RX7 (the "Barracuda Drive"). According to its manufacturer's label, the Barracuda Drive was produced in Thailand.

<u>The Preliminary Forensic Examination Of Dupont's Computer</u>

14.    On or about July 21, 2015, I conducted a forensic examination of the Barracuda Drive. I found approximately 16,843 images and 35 videos containing child pornography in a folder entitled "Downloads" that was nested within the following path:   Documents and Settings / Ed / My Vaults / My Documents / Downloads.   These included the following five video files:[1]

      a.    <u>5yr_anal_moaning.avi</u>.  This is an approximately 11-second video, with audio, that depicts the anal rape of an approximately five year-old girl.

      b.    <u>fuck 1.mpg</u>.  This is an approximately two-minute video, with audio, that depicts the vaginal rape of an approximately seven year-old girl.

---

[1] Still photographs of these five files are attached hereto as Exhibit A for *in camera* review by the Court.   The Government respectfully requests that the Court return Exhibit A to the FBI following its review of Exhibit A.

c.    5y_Penetration_Dad.mpeg.   This is an approximately 25-second video, with audio, that depicts the vaginal rape of an approximately five year-old girl.

d.    (Pthc) 2103-Gabby Fucked.avi.   This is an approximately 2-minute video, with audio, that depicts the vaginal and anal rape of an approximately ten year-old girl.

e.    5yocum.avi.   This is an approximately 36-second video, with audio, of a five year-old girl masturbating and performing oral sex on an adult male.

15.    I also recovered a deleted file that consisted of a 170-page manual entitled "How to practice child love" (the "Manual"). The Manual is a professionally designed document that presents itself as "an education and a step-by-step guide for adults to engage and practice sexual relationships with underage children."

16.    The Manual has the following chapters:

BEFORE YOU BEGIN ON THE EDUCATION

- Important info (5)

THEORY BEFORE PRACTISE

- Child sexuality (6)

- Taboos and shame (8)

- Risks involved (11)

- When to start – what age? (16)

WHERE DO I FIND A CHILD?

- Introduction (19)

- Having own children or family equal access (21)

- Single parents and moms with kids (23)

- Babysitting, daycare and schools (26)

- Children out in the wide open world (37)

- Other creative methods and some final words (45)

- The 4 important advantages (48)

- Survey, approach and create a relationship (57)

THE PRACTICAL STEPS

- Introduction (76)

- Step 1 (The first physical contact) (80)

- Step 2 (The second physical contact) (94)

- Step 3 (Exploring the child's genital) (105)

- Step 4 (Exploring the adult's genital) (130)

- Step 5 (Making love for the first time) (146)

17.     The Manual contained the following statements:

a.       "[T]his step-by-step guide and education will make you able to practice sex with children within a secure safety border, using the very best and latest child psychology and pedagogy, and even experience from child lovers out in the field with several decades of experience."

b.       "The best sexual experience between an adult and a child can only be achieved when the child is old enough to be capable of communicating well with the adult and having a sexual awareness. Therefore, our official minimum age of recommendation is children at approximately 2 years of age when practicing this

guide."

c.       "You might also be wondering about when children can swallow male semen without getting stomach trouble. The swallowing of semen might happen if the child wants to do oral sex -- and some children even like to eat semen during oral sex.  Semen is completely harmless for any human being to swallow and digest, all the way from the day when he or she can eat and digest solid food. For security reasons, we do not recommend any swallowing of semen for children below 2 years of age."

d.       "But – and here comes a big one – most children in the age of 2 – 4 might not be keeping any secrets for a long time. These little ones are just starting to express themselves verbally, and therefore they usually tell everyone about everything that goes on in their lives. [] They might not tell about your sexual relationship directly, but they still might say or do something indirectly that might rise suspicion. Thus it is not that unlikely that you will get yourself into huge trouble if the child's parents or close family members, or even a daycare teacher, should hear or see something suspicious from the child. It is not like this is fated to happen as a rule, but the risk of unrevealing is greater at this age group than any other age group – most risky toward the age of 2."

e.       "If you can not [sic] resist a particular child in this age group, and you really want to perform the practical education of this guide with such a young child, like with a 2 year old, you can actually do it.   But then it must be stated that the younger the child gets toward the 2 year limit, the harder it will get to communicate with the

child on the advanced level that is actually required for the guide to be safely performed regarding secrecy and telling. But if you want to take the risk of getting such a secret unrevealed, our step-by-step chapter can be perfectly applied to 2 year olds."

f.      "You do not even need to leave your own house or lot to meet new children and child love candidates. If you are bound to stay at your house, and preferably living alone, you can actually get the kids all the way to your front door – and even inside. [] This might even be a very safe option too – since as soon as you get the kids inside, no one can watch your activities from outside."

g.      "By living in any sort of community, like most people actually do, you will most likely have several neighbors. And those neighbors are most likely to have children – at least some of them should. And those children will most likely be playing outside and all around in the community. And parents who have lived in a community in happiness for a longer period of time will have a feeling of trust and security toward their community, thus having most of their guards down and allowing their kids to play all over the place without that strict supervision."

h.      "**The advantage of finding sad and lonely children**.  This might be the most important information of this whole chapter: It does not matter how or where you want to find children, but sad and lonely children are the children who you would want to look for. This will not only make your search and approach very convenient, but in addition to that: extremely safe." (emphasis in original). [] These are the ones who will be most dedicated to you – and these are the ones who are

least likely to reveal or tell about your special relationship and intimate secrets. Because these kids will do anything to keep your attention, friendship and love."

## CONCLUSION

18.     Based upon the foregoing, I respectfully submit that there is probable cause to believe that on or about June 23, 2015, in Holyoke, Massachusetts and elsewhere, the defendant Edward Dupont did knowingly possess a visual depiction using a means and facility of interstate and foreign commerce and that had been mailed, and had been shipped and transported in and affecting interstate and foreign commerce, and which contained materials which have been mailed and so shipped and transported, by any means including by computer, the producing of such visual depiction involved the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct, that is:   Edward Dupont knowingly possessed a computer file which contained visual depictions of a minor under the age of 18 years engaging in sexually explicit conduct as defined in Title 18, United States Code, Section 2256(2), to wit, the following files, in violation of Title 18, United States Code, Section 2252(a)(2):

        a.     5yr_anal_moaning.avi.

        b.     fuck 1.mpg.

        c.     5y_Penetration_Dad.mpeg.

        d.     (Pthc) 2103-Gabby Fucked.avi.

        e.     5yocum.avi.   .

Respectfully submitted,

Ian Smythe

10

Special Agent
Federal Bureau of Investigation

Sworn and subscribed before this 3 th day of August, 2015.

HONORABLE KATHERINE A. ROBERTSON
United States Magistrate Judge

11